FILED by _RGS_ D.C.

OCT 1 9 2009

STEVEN M. LARIMORE
CLERK U. S. DIST. CT
S. D. of FLA. – MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____ -Civ **09 - 23136**

COLONY INSURANCE COMPANY,

      Plaintiff,

vs.

COCONUT GROVE BELLAVISTA    'CIV - COOKE'    MAGISTRATE
CONDOMINIUM ASSOCIATION, INC.;             ... NDSTRA
JEFFREY GOLDSTEIN and
MARTHA AUSTRICH,

      Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

     Plaintiff, COLONY INSURANCE COMPANY ("Colony"), sues the Defendants, COCONUT GROVE BELLAVISTA CONDOMINIUM ASSOCIATION, INC., JEFFREY GOLDSTEIN, and MARTHA AUSTRICH,, and alleges:

     1.    This action is within the jurisdiction of the United States District Court pursuant to 28 U.S.C. Section 1332 (a)(1).

     2.    Venue is proper in the Southern District of Florida, Miami Division, pursuant to 28 U.S.C. Section 1391(a)(1) and (2), and Local Rule of the United States District Court for the Southern District of Florida 3.1(C) as the matter in controversy arose in this District and the Defendants reside in and are subject to personal jurisdiction in this District.

     3.    The matter in controversy exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, and as is herein below described, is between citizens of different states.

4.      Plaintiff, Colony, is a corporation organized and existing under the laws of the state of Virginia with its principal place of business in Richmond, Virginia.  Colony is a citizen of the state of Virginia.

5.      Defendant, Coconut Grove Bellavista Condominium Association, Inc., ("Coconut Grove") is a corporation organized and existing under the laws of the state of Florida with its principal place of business in Florida.  Coconut Grove is a citizen of the state of Florida.

6.      Defendant, Jeffrey Goldstein, was and is a resident of Miami-Dade, Florida and citizen of the State of Florida.

7.      Defendant, Martha Austrich, was and is a resident of Miami-Dade, Florida and citizen of the State of Florida.

8.      This action involves questions of insurance coverage with respect to claims made by Jeffrey Goldstein and Martha Austrich ("claimants") against Coconut Grove, arising out of Coconut Grove's alleged failure to maintain or repair the common areas of a condominium, which the claimants assert resulted in "sever and extensive mircrobial growth" in their individual condominium unit.

9.      As a result of the alleged severe and extensive microbial growth and resulting damages, the claimants have filed suit against Coconut Grove, in an action styled, Jeffrey Goldstein, Martha Austrich v. Coconut Grove Bellavista Condominium Association, Inc., filed in the Circuit Court in and for Miami-Dade County, Case No. 08-70484CA2 (""underlying liability action").

10.      A copy of the complaint filed in the underlying liability action is attached hereto as **Exhibit A** (bates stamped CIC 00001 through CIC 00013).

2

11.    Colony issued a Commercial General Liability Policy to Coconut Grove, No. GL3254526 in Miami-Dade County, Florida, to Coconut Grove, with effective dates July 19, 2006 to July 19, 2007.

12.    Colony issued a Commercial General Liability Policy to Coconut Grove, No. GL3254866 in Miami-Dade County, Florida, to Coconut Grove, with effective dates July 19, 2007 to July 19, 2008.

13.    Colony issued a Commercial General Liability Policy to Coconut Grove, No. GL3665154 in Miami-Dade County, Florida, to Coconut Grove, with effective dates July 19, 2008 to July 19, 2009.

14.    Certified copies of Policy No. GL3254526, Policy No. GL3254866 and Policy No. GL3665154 ("Policies") are attached hereto as **Composite Exhibit B** (bates stamped CIC 00014 through CIC 00141).

15.    The Policies afford liability coverage in the amount of $1,000,000 each occurrence, subject to the terms, conditions, limitations, and exclusions in the Policy.

16.    The Policies contained the following insuring obligation:

**SECTION I - COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.    **Insuring Agreement**

   a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or

"property damage" to which this insurances does not apply. . . .

\* \* \*

**b.**  This insurance applies to "bodily injury" and "property damage" only if:

**(1)**  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)**  The "bodily injury" or "property damage" occurs during the policy period; and

**(3)**  Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

\* \* \*

**d.**  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is an Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)**  Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)**  Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

4

(3)    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

\* \* \*

## COVERAGE C MEDICAL PAYMENTS

1.    **Insuring Agreement**

a.    We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1)    On premises you own or rent;

(2)    On ways next to premises you own or rent; or

(3)    Because of your operations;

provided that:

(1)    The accident takes place in the "coverage territory" and during the policy period;

(2)    The expenses are incurred and reported to us within one year of the date of the accident; and

(3)    The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

Policies at Pages Bates Stamped CIC 00040, CIC 00084 and CIC 00126.

17.    The Policies contain the following provision with respect to Who Is An Insured:

## SECTION II – WHO IS AN INSURED

1.    If you are designated in the Declarations as:

\* \* \*

d.    An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

5

Policies at Pages Bates Stamped CIC 00042, CIC 00086 and CIC 00128.

18.     The Policies contain the following definitions:

**SECTION V – DEFINITIONS**

* * *

**3.**     "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

* * *

**15.**     "Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.   Waste includes materials to be recycled, reconditioned or reclaimed.

* * *

17.     "Property damage" means:

    **a.**     Physical injury to tangible property, including all resulting loss of use of that property.   All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**     Loss of use of tangible property that is not physically injured.   All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

* * *

    "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

Policies at Pages Bates Stamped CIC 00046, CIC 00048, CIC 00089, CIC 00091,  CIC 00092, CIC 00131, CIC 00133 and CIC 00134; Fungi or Bacteria Exclusion Endorsement, Form No. CG21670402; Bates Stamped CIC 00052, CIC 00096 and CIC 00138.

19.     The Policies also contain the following exclusions under Coverage A:

**2.    Exclusions**

This insurance does not apply to:

\* \* \*

**b.    Contractual Liability**
"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. . . .

\* \* \*

**f.    Pollution**

(1) "Bodily injury" or "property damage" arising

out of the actual, alleged or threatened dis-

charge, dispersal, seepage, migration, re-

lease or escape of "pollutants":

(a) At or from any premises, site or location

which is or was at any time owned or

occupied by, or rented or loaned to, any

insured.  . . .

\* \* \*

**j.    Damage to Property**
"Property damage" to:
\* \* \*

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations . . .

\* \* \*

## FUNGI OR BACTERIA EXCLUSION

**A.**    The following exclusion is added to Paragraph **2.**, Exclusions of **Section I – Coverage A – Bodily Injury And Property Damage Liability**:

**2.    Exclusions**

This insurance does not apply to:

7

**Fungi or Bacteria**

**a.**   "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.**   Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

Policies at Pages Bates Stamped CIC 00035 – CIC 00037, CIC 00079, CIC 00080, CIC 00082, CIC 000121, CIC 000122 and CIC 00124; Fungi or Bacteria Exclusion Endorsement, Form No. CG21670402; Bates Stamped CIC 00052, CIC 00096 and CIC 00138.

20.   The claimants are owners of an individual unit in the Coconut Grove Bellavista Condominium ("condominium").

21.   In the underlying liability action, the claimants are seeking to recover damages which were allegedly sustained as a result of exposure to microbial growth arising out of Coconut Grove's alleged failure to maintain or repair the common areas of the condominium.

22.   In the underlying liability action, the claimants allege that as a result Coconut Grove's failure to maintain and repair the common areas of the condominium they suffered the following damages in their unit:

8

A)     water leakage into their unit causing water damage and high humidity;

B)     severe and extensive microbial growth and permanent damages in the walls, ceiling and floors, from the microbial growth into those structures, secretions of toxins from those microbes being delivered into and onto all areas of the interior or the apartment, including their personal possessions, throughout the entire time frame from the beginning of the leakage through multiple leaks commencing in 2005 and ongoing to the present;

(C)     damage to personal property located within the unit, which occurred in the timeframe between 2005 and the date of filing of this lawsuit.

See Exhibit A at ¶ 10. See also, Exhibit A at ¶¶ 15, 21, and 27.

23.     In the underlying liability action, the claimants are also seeking to recover damages for bodily injury allegedly suffered as a result of exposure to microbial growth arising out of Coconut Grove's alleged failure to maintain or repair the common areas of the condominium.

24.     Based upon these allegations, the claimants asserted six counts against Coconut Grove, asserting claims for: negligence (Count I); breach of fiduciary duty (Count II); breach of contract (Count III), injunctive relief (Count IV); and, loss of consortium (Counts VI and VII [sic]).

25.     Jeffrey Goldstein applied for and obtained the Commercial General Liability effective dates July 19, 2006 to July 19, 2007, Policy, No. GL3254526, on behalf of Coconut Grove.

26.     Colony reserved its right to deny coverage to Coconut Grove and is providing Coconut Grove a defense in the underlying liability action pursuant to such reservation of rights.

27. Under the subject Policies, coverage would not be afforded for the claims made by the claimants in the underlying liability action.

28. Coconut Grove had knowledge before July 19, 2006, that the claimants' condominium was being damaged by water leaks.

29. Jeffrey Goldstein had knowledge before July 19, 2006, that his condominium was being damaged by water leaks.

30. Coconut Grove had knowledge before July 19, 2006, that the claimants' condominium sustained microbial growth as a result of the water leaks.

31. Jeffrey Goldstein had knowledge before July 19, 2006, that his condominium sustained microbial growth as a result of the water leaks.

32. Coconut Grove had knowledge before July 19, 2006, that the claimants suffered bodily injury as a result of the microbial growth in the claimants' condominium.

33. Jeffrey Goldstein had knowledge before July 19, 2006, that he suffered bodily injury as a result of the microbial growth in his condominium.

34. To the extent the claimants are seeking to recover for breach of contract, coverage is excluded under the Policies.

35. Coverage is excluded for the claims made in the underlying liability action by the Policies' pollution exclusion.

36. Coverage is excluded for the claims made in the underlying liability action by the Policies' Fungi or Bacteria exclusion.

37. No coverage exists for the claimants' claims for injunctive relief in the underlying liability action because the claimants are not seeking to recover damages because of "bodily injury" or "property damage" as those terms are defined under the Policies.

38.     No coverage exists for the claimants' claims for property damage in the underlying liability action which arose out of the operations of Coconut Grove's, its contractors' or subcontractors' work on the subject property.

39.     No coverage exists for the claimants' claims for attorney's fees in the underlying action because attorneys fees are not damages because of "bodily injury" or "property damage" as those terms are defined under the Policies.

40.     It is the position of Colony that Defendants are not entitled to insurance coverage. Nevertheless, Colony is in need of and entitled to a declaration of rights regarding same.

41.     There exists a bona fide, actual and present dispute between the parties.

42.     Colony is in need of judicial interpretation or construction of the aforementioned insurance Policies as related to the claims made by Jeffrey Goldstein and Martha Austrich in the underlying liability action.

43.     Colony is without an adequate remedy at law except by this Court's Declaratory Judgment declaring the rights of the Plaintiff.

WHEREFORE, Plaintiff, Colony Insurance Company, requests that this Court assume jurisdiction of this cause and issue a judgment declaring the following: (1) That there is no insurance coverage afforded by Colony for the claims in the underlying liability action; (2) That Colony has no duty to defend or indemnify Coconut Grove Bellavista Condominium Association, Inc. in the underlying liability action, and, (3) Awarding Colony its costs in this action.

11

DATED this <u>19th</u>  day of October, 2009.

Respectfully submitted,

_____

Joshua D. Lerner, Esquire
Florida Bar No. 455067
RUMBERGER, KIRK & CALDWELL
Brickell Bayview Centre, Suite 3000
80 S.W. 8th Street (33130-3037)
Post Office Box 01-9041
Miami, Florida  33101
Telephone:  (305) 358-5577
Telecopier:  (305) 371-7580

AND

Candy L. Messersmith, Esquire
Florida Bar No. 0186996
RUMBERGER, KIRK & CALDWELL
A Professional Association
Lincoln Plaza, Suite 1400
300 South Orange Avenue
Post Office Box 1873
Orlando, Florida  32802-1873
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133

Attorneys for Plaintiff, Colony Insurance Company

12

# EXHIBIT A

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CASE NO.:   08-70484CA  2'

JEFFREY GOLDSTEIN
MARTHA AUSTRICH

     Plaintiffs,

vs.

COCONUT GROVE BELLAVISTA
CONDOMINIUM ASSOCIATION, INC.,
a Florida non-profit corporation, and
THE BIG ROOFING COMPANY, LLC,

     Defendants.

THE ORIGINAL FILED
ON   NOV 1 4 2008
IN THE OFFICE OF
CIRCUIT COURT DADE CO
CIVIL DIVISION

_____/

COMPLAINT

COME NOW the Plaintiffs, JEFFREY GOLDSTEIN and MARTHA AUSTRICH, as

husband and wife, by and through their undersigned counsel, and hereby sue the Defendants,

COCONUT GROVE BELLAVISTA CONDOMINIUM ASSOCIATION, INC., a Florida non-

profit corporation, and THE BIG ROOFING COMPANY, LLC, and in support thereof allege the

following:

    1.    This Honorable Court has jurisdiction and venue is proper as the amount in

controversy exceeds fifteen thousand dollars ($15,000.00), and all material acts hereto took place

in Miami-Dade County, Florida.

    2.    At all times material hereto, the Plaintiffs, JEFFREY GOLDSTEIN and

MARTHA AUSTRICH were residents of Miami-Dade County, Florida.

    3.    At all times material hereto, Defendant, COCONUT GROVE BELLAVISTA

CONDOMINIUM ASSOCIATION, INC. (hereinafter referred to as "Defendant

BELLAVISTA") is a Florida non-profit corporation that conducts business in Miami-Dade

County, Florida, and is the corporate entity responsible for maintaining the affairs of the Coconut

Grove BELLAVISTA Condominium, a residential condominium situated within Miami-Dade

County, Florida.

4.    At all times material hereto, Defendant, THE BIG ROOFING COMPANY, LLC

(hereinafter referred to as "Defendant BIG ROOFING"), is a limited liability company registered

to do business in Florida, and is in fact doing business in Miami-Dade County, Florida.

5.    At all times material hereto, the Plaintiffs, JEFFREY GOLDSTEIN and

MARTHA AUSTRICH were the owners of unit 3564 in the Bellavista Condominium, known as

the real property described as follows:

> "Lot 6, Block 3 of FAIRVIEW, according to the Plat thereof, as
> recorded in Plat Book 4, at page 176 of the Public Records of Dade
> County Florida, and also begin at the southerly corner of Lot 7,
> Block3 of said FAIRVIEW, thence run northwesterly along the
> northwesterly line of Fairview Place, 46.83 feet; then run
> southwesterly parallel to the northwesterly line of Lot 6, of said
> Block 3, 102 feet more or less to the southerly bank of Osceola
> Canal 46.83 feet to the northwesterly corner of said lot 6; thence
> run northeasterly along the northerly line of said Lot 6, a distance
> of 102 feet more or less to the Point of Beginning."

6.    The Plaintiffs have been required to retain the services of the undersigned counsel

and are responsible for paying him a reasonable fee for his services.

7.    In relevant part, Florida Statute 718.202 states as follows:

> "(1) Each unit owner, each tenant and other invitee, and each association
> shall be governed by and shall comply with the provisions of this chapter,
> the declaration, the documents creating the association, and the association
> bylaws and the provisions thereof shall be deemed expressly incorporated
> into any lease of a unit.  Actions for damages or for injunctive relief, or
> both, for failure to comply with these provisions may be brought by the
> association or by a unit owner against:
>
>      (a) The association,
>      (b) A unit owner.
>      (c) Directors designated by the developer, for actions taken by
> them prior to the time control of the association is assumed by unit owners
> other than the developer.

CIC 00002

(d) Any director who willfully and knowingly fails to comply with these provision.

The prevailing party in any such action or in any action in which the purchaser claims a right of voidability based upon contractual provisions as required in §718.503(1)(a) is entitled to recover reasonable attorney's fees. A unit owner prevailing in an action between the association and the unit owner under this section, in addition to recovering his or her reasonable attorney's fees, may recover additional amounts as determined by the court to be necessary to reimburse the unit owner for his or her share of assessments levied by he association to fund its expenses of the litigation. This relief does not exclude other remedies provided by law.

## COUNT I – NEGLIGENCE OF DEFENDANT COCONUT GROVE BELLAVISTA CONDOMINIUM ASSOCIATION, INC.

The Plaintiffs reaffirm and reallege paragraphs 1 through 6 as if fully set forth herein and further allege:

8.    The Defendant, BELLAVISTA, owes a duty to the Plaintiffs, JEFFREY GOLDSTEIN and MARTHA AUSTRICH to maintain the condominium's common areas in good repair. The Association therefore has a duty under common law to maintain the condominium's common areas, including the subject-leaking roof and structural walls, and to remediate, repair, dehumidify and decontaminate the premises under its control so as to prevent microbial amplification and cross-contamination between the common areas and condominium units including Plaintiffs' property.

9.    The Defendant, BELLAVISTA, breached its duty owed to the Plaintiffs, JEFFREY GOLDSTEIN and MARTHA AUSTRICH by failing to maintain or timely repair the common area roof and wall structures, allowing repeated leakage to occur without mitigation and remediation. The leakage and high humidity then entered the premises of the Plaintiffs over time, on a repeated basis. Many of the areas of leakage and high humidity which entered into Plaintiffs' dwelling unit were unknown to the Plaintiffs as they were hidden behind walls and

CIC 00003

ceilings. Similarly, the abnormal growth of high levels of dangerous and harmful microbes also occurred within the common areas, the condominium unit and in hidden areas located therein.

10.    As a result of the breach of duty by the Defendant, BELLAVISTA, the Defendant caused the Plaintiffs to suffer the following damages in their unit:

A)    water leakage into their unit causing water damage and high humidity;

B)    severe and extensive microbial growth and permanent damages in the walls, ceiling and floors, from the microbial growth into those structures, secretions of toxins from those microbes being delivered into and onto all areas of the interior of the apartment, including their personal possessions, throughout the entire time frame from the beginning of the leakage through multiple leaks commencing in 2005 and ongoing to the present;

C)    damage to personal property located within the unit, which occurred in the timeframe between 2005 and the date of filing of this lawsuit.

11.    As a result of the foregoing, the Plaintiffs have suffered loss of use of their unit, contamination of their personal property, contamination of their entire dwelling unit, loss of use of their property and personal injury as a result of exposures to the microbial populations and the chemicals excreted by those microbes.

12.    Pursuant to 718.303 Fla. Stat., the Plaintiffs are entitled to be reimbursed the reasonable attorney's fees and court costs they have incurred in this regard.

WHEREFORE, as a direct and proximate result of the aforementioned, the Plaintiffs, JEFFREY GOLDSTEIN and MARTHA AUSTRICH have suffered physical exposure to

CIC 00004

harmful microorganisms and injury, sickness, potential disease, disability, and/or suffered physical handicap, aggravated a preexisting condition and incurred medical and related expenses as well as damage to their property, both personal and real, including loss of market value, remediation costs, lost profits/rents and loss of use expenses and therefore demand judgment for damages against the Defendant, COCONUT GROVE BELLAVISTA CONDOMINIUM ASSOCIATION, INC., together with pre-judgment interest, costs and attorneys fees and demand trial by jury of all issues so triable as of right by jury.

## COUNT II - BREACH OF FIDUCIARY DUTY

The Plaintiffs reaffirm and reallege paragraphs 1 through 6 as if fully set forth herein and further allege:

13.   Pursuant to Florida Statute 718.111, the officers and directors of the Defendant, BELLAVISTA have a fiduciary duty owed to the unit owners.

14.   The Defendant, BELLAVISTA, through the acts and inaction of its officers and directors, breached its duty owed to the Plaintiffs, JEFFREY GOLDSTEIN and MARTHA AUSTRICH by failing to maintain the common area roof and structural walls.

15.   As a result of the breach of duty by the Defendant, BELLAVISTA the Defendant caused the Plaintiffs to suffer the following damages in their unit:

A)   water leakage and excessive humidity into their unit;

B)   severe and extensive microbial growth and permanent damages in the walls, ceiling and floors, including the microbial growth into those structures, secretions of toxins from those microbes being delivered into and onto all areas of the interior of the apartment, including the personal possessions, on a daily basis throughout the entire time frame from the

5

beginning of the leakage through multiple leaks over the years to the present;

C)    damage to personal property located within the unit, which occurred in the timeframe between 2005 and the date of filing of this lawsuit.

16.    As a result of the foregoing, the Plaintiffs have suffered loss of use of their unit, contamination of their personal property, contamination of their entire dwelling unit, loss of use of their property and personal injury as a result of exposures to the microbial populations and the chemicals excreted by those microbes.

17.    Pursuant to 718.303 Fla. Stat., the Plaintiffs, JEFFREY GOLDSTEIN and MARTHA AUSTRICH are entitled to be reimbursed the reasonable attorney's fees and court costs they have incurred in this regard.

WHEREFORE, as a direct and proximate result of the aforementioned, the Plaintiffs, JEFFREY GOLSTEIN and MARTHA AUSTRICH have suffered physical exposure to harmful microorganisms and injury, sickness, potential disease, disability, and/or suffered physical handicap, aggravated a preexisting condition and incurred medical and related expenses as well as damage to their property, both personal and real, including loss of market value, remediation costs, lost profits/rents and loss of use expenses and therefore demand judgment for damages against the Defendant, COCONUT GROVE BELLAVISTA CONDOMINIUM ASSOCIATION, INC., together with pre-judgment interest, costs and attorneys fees and demand trial by jury of all issues so triable as of right by jury.

## COUNT III - BREACH OF CONTRACT

The Plaintiffs reaffirm and reallege paragraphs 1 through 6 as if fully set forth herein and further allege

6

CIC 00006

18.    In relevant part, Exhibit "A", of Defendant's Declaration of Condominium states as

follows:

> "Descriptions of Condominium Units: The boundaries of said unit shall be
> deemed to be and include the inner decorated and/or finished surface of the
> perimeter walls, floors, and ceilings, including plaster, paint, wallpaper, etc.
> Wall and partitions contained within said unit are deemed to be a portion of
> said unit."

19.    In relevant part, the Defendant's Declaration of Condominium states as follows:

> Common Elements:  Common Elements shall mean and comprise all of
> the real property, improvements, and facilities of the Condominium
> Property not included in the units, but shall include easements for
> conduits, pipes, ducts, plumbing, wiring, and other facilities for the
> furnishing of utility services to units and common elements and the
> easements of support in every portion of a unit which contributes to the
> support of the improvements.

20.    The Defendant, BELLAVISTA breached its contractual obligation to the

Plaintiffs in this regard by failing to maintain the common area roof.

21.    As a result of the Defendant, BELLAVISTA, failing to maintain the common area

roof, the Defendant caused the Plaintiffs to suffer the following damages in their unit:

A)    water leakage and elevated humidity in their unit;

B)    severe and extensive microbial growth and permanent damages in

the walls, ceiling and floors, from the microbial growth into those

structures, secretions of toxins from those microbes being delivered into

and onto all areas of the interior of the apartment, including the personal

possessions, on a daily basis throughout the entire time frame from 2005

to the present;

C)    damage to personal property located within the unit, which

occurred in the timeframe between 2005 and the date of filing of this

lawsuit

7

22.    As a result of the foregoing, the Plaintiffs have suffered loss of use of their unit, contamination of their personal property, contamination of their entire dwelling unit, loss of use of their property and personal injury as a result of exposures to the microbial populations and the chemicals excreted by those microbes.

23.    Pursuant to 718.303 Fla. Stat., the Plaintiffs, JEFFREY GOLDSTEIN and MARTHA AUSTRICH are entitled to be reimbursed the reasonable attorney's fees and court costs they have incurred in this regard.

WHEREFORE, as a direct and proximate result of the aforementioned, the Plaintiffs, JEFFREY GOLDSTEIN and MARTHA AUSTRICH have suffered property damage, which is the subject matter of their contract, and therefore demand judgment for damages against the Defendant, COCONUT GROVE BELLAVISTA CONDOMINIUM ASSOCIATION, INC., together with pre-judgment interest, costs and attorneys fees and demand trial by jury of all issues so triable as of right by jury.

## COUNT IV - INJUNCTIVE RELIEF

The Plaintiffs reaffirm and reallege paragraphs 1 through 6 as if fully set forth herein and further allege

24.    In relevant part, Exhibit A of the Defendant's Declaration of Condominium states as follows:

> "Descriptions of Condominium Units: The boundaries of said unit shall be deemed to be and include the inner decorated and/or finished surface of the perimeter walls, floors, and ceilings, including plaster, paint, wallpaper, etc. Wall and partitions contained within said unit are deemed to be a portion of said unit."

25.    In relevant part, the Exhibit A of the Defendant's Declaration of Condominium states as follows:

CIC 00008

Common Elements: Common Elements shall mean and comprise all of the real property, improvements, and facilities of the Condominium Property not included in the units, but shall include easements for conduits, pipes, ducts, plumbing, wiring, and other facilities for the furnishing of utility services to units and common elements and the easements of support in every portion of a unit which contributes to the support of the improvements.

26.     The Defendant, BELLAVISTA, breached its contractual obligation to the Plaintiffs in this regard by failing to maintain the common area roof and structural walls.

27.     As a result of the Defendant, BELLAVISTA, failing to maintain the common area roof, the Defendant caused the Plaintiffs to suffer the following damages in their unit:

A)      water leakage and elevated humidity in their unit;

B)      severe and extensive microbial growth and permanent damages in the walls, ceiling and floors, from the microbial growth into those structures, secretions of toxins from those microbes being delivered into and onto all areas of the interior of the apartment, including the personal possessions, on a daily basis throughout the entire time frame from the beginning of the leakage through multiple leaks over the years to the present;

C)      damage to personal property located within the unit, which occurred in the timeframe between 2005 and the date of filing of this lawsuit

28.     As a result of the foregoing, the Plaintiffs have suffered loss of use of their unit, contamination of their personal property, contamination of their entire dwelling unit, loss of use of their property and personal injury as a result of exposures to the microbial populations and the chemicals excreted by those microbes.

29.     The Plaintiffs, JEFFREY GOLDSTEIN and MARTHA AUSTRICH move for an order from this Honorable Court which requires the Defendant, BELLAVISTA, to take any and all necessary action to repair the common area structures in a professional and workmanlike manner and in accordance with state and local building codes, and ensure that the damage to the Plaintiffs' unit not occur again in the future from this existing condition.

CIC 00009

30.     Inasmuch as the Plaintiffs, JEFFREY GOLDSTEIN and MARTHA AUSTRICH are not permitted to repair the common area themselves, pursuant to paragraph 3 of Defendant BELLAVISTA, Declaration of Condominium, sec. XI-C which states, "No unit owner shall make any alterations in the portions of the improvements of the condominium which are to be maintained by the Association". Additionally, the Plaintiffs cannot simply sell the unit and move therefrom in order to mitigate their damages, as the above referenced latent defects must be disclosed thereby undermining marketability in this economic climate, they are without an adequate remedy at law in this regard as monetary compensation will not allow them to make the repair, and the Plaintiffs will suffer irreparable harm should the court not grant them injunctive relief.

31.     Pursuant to 718.303 Fla. Stat., the Plaintiffs are entitled to be reimbursed the reasonable attorney's fees and court costs they have incurred in this regard.

WHEREFORE, as a direct and proximate result of the aforementioned, the Plaintiffs, JEFFREY GOLDSTEIN and MARTHA AUSTRICH have suffered physical exposure and/or injury, sickness, potential disease, disability, suffered physical handicap, loss of the capacity for enjoyment of life and property damage and therefore demand judgment for damages against the Defendant, COCONUT GROVE BELLAVISTA CONDOMINIUM ASSOCIATION, INC., together with pre-judgment interest, costs and attorneys fees and demand trial by jury of all issues so triable as of right by jury.

## COUNT V – NEGLIGENCE OF DEFENDANT, THE BIG ROOFING COMPANY, LLC

The Plaintiff reaffirms and realleges paragraphs 1 through 6 as if fully set forth herein and further alleges:

32.     At all times material hereto, the Defendant, BIG ROOFING, had a duty of care to reasonably repair the roof of the subject building and not damage the roof.  Defendant, BIG

10

CIC 00010

ROOFING, also owed a duty to adequately and timely repair and remediate the premises, minimize the extent of damage, dry the premises and prevent the growth of microbes within the premises once Defendant BIG ROOFING was aware that their actions and inaction had caused water intrusion into the condominium structure.   Defendant had a duty to warn Plaintiffs regarding the dangers presented by water intrusion, consequential microbial growth and potential for human injury after causing water intrusion into the condominium structure.

33.    Defendant, BIG ROOFING, breached these duties by any or all of the following acts or omissions:

A)    causing water intrusion into the condominium structure by its maintenance and operation activities on the condominium roof;

B)    failing to adequately and timely repair and remediate the premises after having received notice of the water and microbial damage;

C)    failing to warn Plaintiffs, JEFFREY GOLDSTEIN and MARTHA AUSTRICH, regarding the danger presented by water intrusion and related consequential microbial growth, and its potential for harmful contamination of Plaintiffs' property and its cause of human injury and illness.

34.    Defendant, BIG ROOFING, knew or should have known that its negligence resulting in water intrusion would cause dangerous indoor air quality to occur with resultant abnormal microorganism growth and property damage.

35.    As a direct and proximate result of the aforementioned negligence of the Defendant, BIG ROOFING, the Plaintiffs, JEFFREY GOLDSTEIN and MARTHA AUSTRICH, have suffered physical exposure to harmful microorganisms and injury, sickness, potential disease, disability, and/or suffered physical handicap, aggravated a preexisting condition and incurred medical and

11

related expenses. The Plaintiffs also sustained damage to their property, both personal and real, including loss of market value, remediation costs, lost profits/rents and loss of use expenses.

WHEREFORE, as a direct and proximate result of the aforementioned, the Plaintiffs, JEFFREY GOLDSTEIN and MARTHA AUSTRICH have suffered physical exposure and/or injury, pain, suffering, sickness, potential disease, disability, suffered physical handicap, loss of the capacity for enjoyment of life and property damage and therefore demand judgment for damages against the Defendant, THE BIG ROOFING COMPANY, LLC, together with pre-judgment interest, costs and demand trial by jury of all issues so triable as of right by jury.

## COUNT VI - LOSS OF CONSORTIUM CLAIM

The Plaintiffs reaffirm and reallege paragraphs 1 through 6 as if fully set forth herein and further alleges:

36. At all times material hereto, the Plaintiff, JEFFREY GOLDSTEIN, was and is the husband of the Plaintiff, MARTHA AUSTRICH.

37. As a direct and proximate result of the negligence and carelessness of the Defendants, BELLAVISTA and BIG ROOFING, the Plaintiff, MARTHA AUSTRICH, has suffered and will continue to suffer the loss of her husband's services, support, consortium and the care and comfort of his society.

WHEREFORE, Plaintiff, MARTHA AUSTRICH, demands judgment for damages against the Defendants, COCONUT GROVE BELLAVISTA CONDOMINIUM ASSOCIATION, INC. and THE BIG ROOFING COMPANY, LLC, together with costs and demands trial by jury of all issues triable as of right by jury.

## COUNT V - LOSS OF CONSORTIUM CLAIM

The Plaintiffs reaffirm and reallege paragraphs 1 through 10 as if fully set forth herein and further alleges:

12

CIC 00012

38. At all times material hereto, the Plaintiff, MARTHA AUSTRICH, was and is the lawful wife of the Plaintiff, JEFFREY GOLDSTEIN.

39. As a direct and proximate result of the negligence and carelessness of Defendants BELLAVISTA and BIG ROOFING, Plaintiff, JEFFREY GOLDSTEIN, has suffered and will continue to suffer the loss of his wife's services, support, consortium and the care and comfort of her society.

WHEREFORE, Plaintiff, JEFFREY GOLDSTEIN, demands judgment for damages against the Defendants, COCONUT GROVE BELLAVISTA CONDOMINIUM ASSOCIATION, INC, and THE BIG ROOFING COMPANY, LLC, together with costs and demands trial by jury of all issues triable as of right by jury.

DATED this 6th day of November, 2008.

> KRUPNICK, CAMPBELL, MALONE,
> BUSER, SLAMA, HANCOCK,
> LIBERMAN & McKEE, P.A.
> Attorneys for Plaintiffs
> 700 Southeast Third Avenue
> Courthouse Law Plaza, Suite 100
> Fort Lauderdale, Florida 33316
> (954) 763-8181
>
> BY: _____
> ROBERT J. McKEE, ESQUIRE
> Florida Bar No.: 0972614

CIC 00013

# EXHIBIT B

 Colony.
MEMBER ARGONAUT GROUP

8720 Stony Point Parkway
Suite 300
Richmond, VA  23235



**IN WITNESS WHEREOF, the Company has caused this policy to be signed by its
President and Secretary as duly authorized representatives of the Company.**

**Dale Pilkington, President**

**Matt Pollak, Secretary**

Colony Insurance Company   ◆   Colony Specialty Insurance Company   ◆   Colony National Insurance Company

PJCG (06/05)

**CIC 00014**

08/05/2009 12:26 PM



## COMMON POLICY DECLARATIONS

# Colony Insurance Company
9201 Forest Hill Avenue, Suite 200
Richmond, VA 23235

POLICY NUMBER
GL 3254526
RENEWAL OF

*Underwritten By Colony Management Services, Inc.*

PDQ CODE
97G

**1. NAMED INSURED and MAILING ADDRESS:**
COCONUT GROVE BELLAVISTA CONDO ASSOCIATION
C/O MR. JEFF GOLDSTEIN
3564 W FAIRVIEW STREET
MIAMI          FL   33133

**PRODUCER:** 09005
BURNS & WILCOX, LTD.
18302 HIGHWOODS PRESERVE PARKWAY   SUITE 310
TAMPA                    FL 33647 1759

**2. POLICY PERIOD:** From 07/19/2006 __ to 07/19/2007 __ 12:01 A.M. Standard Time at your Mailing Address above.
IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE
AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**3. THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.  THIS
PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

| COVERAGE PARTS | PREMIUM |
|---|---|
| Commercial General Liability | $ 1,850.00 |
| Commercial Property | $ NOT COVERED |
| Commercial Crime | $ NOT COVERED |
| Commercial Inland Marine | $ NOT COVERED |
| Commercial Farm and Ranch | $ NOT COVERED |
| Owners And Contractors Protective | $ NOT COVERED |
| Coverage for Certified Acts of Terrorism Rejected; Exclusion Attached. (Per Policyholder Disclosure TRIA2002Notice-1202 attached.) | $ NOT COVERED |

*I hereby certify this to be a true and correct copy*

*Carolyn Ford*
Carolyn Ford-Data Entry Supervisor

Surplus Lines Agent: Michael J. Franzese
License # A089240
18302 Highwoods Preserve Prky  Suite 310, Tampa, FL 35547

Producing Agent: Samuel Cole

Address: 201 Alhambra Cir Ste 1600

City: Coral Gables

This insurance is issued pursuant to the Florida Surplus Lines Law.
Persons insured by Surplus Lines Carriers do not have the protection
of the Florida Insurance Guaranty Act to the extent of any right of
Recovery for the obligation of the insolvent unlicensed insurer.

| | |
|---|---|
| **TOTAL** | $ 1,850.00 |
| POLICY FEE | $ 35.00 |
| INSPECTION FEE | $ 150.00 |
| SURPLUS LINES TAX | $ 101.75 |
| STAMPING TAX | $ 4.07 |
| | $ |
| | $ |
| | $ |
| | $ |

Premium shown is payable at inception.

Total Policy Premium: $ 2,140.82

**4. FORMS APPLICABLE TO ALL COVERAGE PARTS:**

See Schedule of Forms and Endorsements - U001

## NO FLAT CANCELLATIONS

NOTARY PUBLIC

**5. BUSINESS DESCRIPTION:** CONDO ASSOCIATION          VM/SG

My Commission Expires

Countersigned: 08/17/06
           Date

By: _____

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Copyright, Insurance Services Office, Inc., 1984

Authorized Representative

DCJ6550 (07/05)

KIMBERLY K. LOWRIE
COMMONWEALTH
REGISTRATION NO.
113021
MY COMM. EXPIRES:
06/30/2012
OF VIRGINIA
NOTARY PUBLIC

CIC 00015

**08/05/2009 12:26 PM**



COCONUT GROVE BELLAVISTA CONDO ASSOCIATION
Insured: C/O MR. JEFF GOLDSTEIN

Policy Number: GL3254526

# SCHEDULE OF FORMS AND ENDORSEMENTS

Forms and Endorsements applying to and made part of this policy at the time of issuance:

| NUMBER | TITLE |
|--------|-------|
| FORMS APPLICABLE - POLICY COMMON FORMS | |
| PJCG  (06-05) | COMMON POLICY JACKET |
| DCJ6550 (07-05) | COMMON POLICY DECLARATIONS |
| U001  (10-04) | SCHEDULE OF FORMS AND ENDORSEMENTS |
| U002  (09-04) | MINIMUM POLICY PREMIUM |
| U094  (07-02) | SERVICE OF SUIT |
| UCG2175 (09-04) | EXCL-CERT. ACTS OF TERRORISM AND OTHER ACTS OF TERRORISM |
| IL0017 (11-98) | COMMON POLICY CONDITIONS |
| IL0021 (04-98) | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT |

FORMS APPLICABLE - COMMERCIAL GENERAL LIABILITY

| | |
|--------|-------|
| DCJ6553 (07-02) | COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS |
| U003  (07-02) | HAZARDOUS MATERIALS EXCLUSION |
| U004  (07-02) | MISCELLANEOUS EXCLUSIONS ENDORSEMENT |
| U006  (07-02) | ASSAULT AND BATTERY EXCLUSION |
| U048  (09-04) | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| U070  (07-02) | DEDUCTIBLE LIABILITY INSURANCE |
| U155  (07-02) | ABSOLUTE AUTO, AIRCRAFT AND WATERCRAFT EXCLUSION |
| U159  (07-02) | LIMITATION OF COVERAGE TO BUSINESS DESCRIPTION |
| U177  (07-02) | DIRECTORS AND OFFICERS LIABILITY EXCLUSION |
| CG0001 (10-01) | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG0062 (12-02) | WAR LIABILITY EXCLUSION |
| CG2004 (11-85) | ADDITIONAL INSURED - CONDOMINIUM UNIT OWNRS |
| CG2167 (04-02) | EXCLUSION - FUNGI OR BACTERIA |

FORMS APPLICABLE - STATE SPECIFIC

| | |
|--------|-------|
| UIL0255 (07-02) | FLORIDA CHANGES - CANCELLATION AND NONRENEWAL |

Important notice: See the actual policy forms attached for the full title, terms and conditions.

U001 (10-04)

Company

Page 1 of 1

**CIC 00016**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MINIMUM POLICY PREMIUM

The following additional policy Conditions supercede any other policy conditions as regards the "minimum earned premium" for this policy:

**Minimum Earned Premium**

This policy is subject to a "minimum earned premium". "Minimum earned premium" means the premium that is calculated as follows:

1. The total policy premium as shown in the policy Declarations, plus

2. Any premium adjustment by endorsements, plus

3. Any additional premium developed by audit.

**Audits and Minimum Earned Premium**

Audits will not reduce the "minimum earned premium". The due date for audit premiums is the date shown as the due date on the bill.

**Cancellation and Minimum Earned Premium**

1. If you cancel this policy, the return premium will be 90% of the pro rata balance of any remaining unearned premium but no less than  25  % of the "minimum earned premium".

2. If we cancel the policy for any reason, other than for non-payment of premium, the "minimum earned premium" shall not apply. We will return to you the pro rata amount of the unearned premium.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U002-0904

Page 1 of 1

Company

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SERVICE OF SUIT

Service of process may be made upon the Company to:

Claims Manager
  Colony Insurance Company,
  Colony National Insurance Company, or
  Colony Specialty Insurance Company
8720 Stony Point Parkway, Suite 300
Richmond, Virginia 23235

Where required by statute, regulation or other regulatory directive, the Company appoints the Commissioner of Insurance, or other designee specified for that purpose, as its attorney for acceptance of service of all legal process in the state in any action or proceeding arising out of this insurance.

The Commissioner or other designee is requested to forward process to the Company as shown above, or if required in his/her particular state, to a designated resident agent for service of process.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U094-0702

CIC 00018

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CERTIFIED ACTS OF TERRORISM AND OTHER ACTS OF TERRORISM EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM AND PUNITIVE DAMAGES**

"Any injury or damage" arising, directly or indirectly, out of:

**(1)** "Certified acts of terrorism" or "other acts of terrorism", including any action taken in hindering or defending against an actual or expected incident of "certified acts of terrorism" or "other acts of terrorism"; or

**(2)** Any act of terrorism:

**(a)** that involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**(b)** that is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**(c)** in which pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials;

regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage in **(1)** or **(2)** above; including

**(3)** Damages arising, directly or indirectly, out of **(1)** or **(2)** above that are awarded as punitive damages.

**B.** Exclusion **h.** under Paragraph **2. Exclusions** of **SECTION I – COVERAGE C MEDICAL PAYMENTS** does not apply.

**C.** The following definitions are added to the **DEFINITIONS** Section:

For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002.  The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

**a.** The act resulted in aggregate losses in excess of $5 million; and

    **b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002. Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**D.** In the event of an act of terrorism, a "certified act of terrorism" or an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

       ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

    a. Make inspections and surveys at any time;

    b. Give you reports on the conditions we find; and

    c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    a. Are safe or healthful; or

    b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

CIC 00021

Copyright, Insurance Services Office, Inc., 1998

INTERLINE
IL 00 21 04 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

    A. Under any Liability Coverage, to "bodily injury" or "property damage":

        (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

        (1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

        (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

        (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

    "Hazardous properties" includes radioactive, toxic or explosive properties.

    "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

**CIC 00022**

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

    **(a)** Any "nuclear reactor";

    **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

    **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

CIC 00023

**08/05/2009 12:26 PM**

## COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

This Coverage Part consists of this Declarations Form, the Common Policy Conditions, the Commercial General Liability Form and the Endorsements indicated as applicable. (See "COMMON POLICY DECLARATIONS" for Items 1 and 2)

POLICY NO. GL 3254526

NAMED INSURED  COCONUT GROVE BELLAVISTA CONDO ASSOCIATION
C/O MR. JEFF GOLDSTEIN

### 3. LIMITS OF INSURANCE

| | | |
|---|---|---|
| General Aggregate Limit (Other Than Products - Completed Operations) | $2,000,000 | |
| Products Completed Operations Aggregate Limit | $1,000,000 | |
| Personal & Advertising Injury Limit | $1,000,000 | |
| Each Occurrence Limit | $1,000,000 | |
| Damage To Premises Rented To You Limit | $ 100,000 | Any One Premises |
| Medical Expense Limit | $ 5,000 | Any One Person |

RETROACTIVE DATE  (CG 00 02 only) - Coverage A of this insurance does not apply to "bodily injury" or "property damage" which occurs before the Retroactive Date, if any, shown below.

Retroactive Date:  NONE        (Enter Date or "None" if no Retroactive Date applies.)

Location of All Premises You Own, Rent or Occupy (Same as Item 1 unless shown below):
3568-3574 W FAIRVIEW STREET        MIAMI        FL  33133
3560-3566 W FAIRVIEW STREET        MIAMI        FL  33133

| CLASSIFICATION | CODE NO. | PREMIUM BASIS | | RATE | ADVANCE PREMIUM PR / CO | ALL OTHER |
|---|---|---|---|---|---|---|
| CONDOMINIUMS-RESIDENTIAL (ASSOCATION RISK ONLY)-PRODUCTS/COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT | 334  62003 | O | 8 | 47.250 | | 750 |
| SWIMMING POOLS-PRODUCTS COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT | 334  48925 | O | 1 | 750.00 | | 750.00 |
| NON-OWNED COVERAGE | | O | 1 | 350 | | 350 |
| | | O | EACH | | | |
| | | O | EACH | | | |
| | | O | EACH | | | |

4. FORMS / ENDORSEMENTS APPLICABLE:
SEE SCHEDULE OF FORMS AND ENDORSEMENTS - FORM U001

TOTAL PREMIUM FOR THIS COVERAGE PART  $  1,850.00

5. FORM OF BUSINESS:  ☐ Individual  ☐ Joint Venture  ☐ Partnership  ☒ Organization (Other than Partnership or Joint Venture)  ☐ Corporation
Audit Period: Annual unless otherwise stated:

DCJ6553 (07-02)        Includes Copyright material of Insurance Services Office, Inc. with its permission.
Copyright, Insurance Services Office, Inc., 1984
Company

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# HAZARDOUS MATERIALS EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, f.** and **SECTION I – COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions, n.** and **m.** are replaced by the following:

This insurance does not apply to:

**Hazardous Materials**

**(1)** "Bodily injury", "property damage" or "personal and advertising injury" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "hazardous materials" at any time.

**(2)** Any loss, cost or expense arising out of any:

    **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "hazardous materials"; or

    **(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of  "hazardous materials".

**(3)** Any obligations to share damages with or indemnify another party whom must pay damages because of injury or damage relating to "hazardous materials".

**(4)** Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with paragraphs **(1)**, **(2)**, or **(3)** above.

This exclusion applies whether or not such "hazardous material(s)" has any function in your business, operations, premises, site or location.

B. **SECTION V – DEFINITIONS** is amended and the following added:

"Hazardous materials" means "pollutants", lead, asbestos, silica and materials containing them.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U003-0702        Includes copyrighted material of Insurance Services Office, Inc.,        Page 1 of 1
with its permission.

CIC 00025

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# MISCELLANEOUS EXCLUSIONS ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** is amended and the following is added:

### EXCLUSION - INTERCOMPANY PRODUCTS SUITS

This insurance does not apply to any claim for damages by any Named Insured against another Named Insured because of "bodily injury" or "property damage" arising out of or resulting from "your products" and included within the "products-completed operations hazard".

B. **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** and **COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions** are amended and the following are added:

### USL&H, JONES ACT and MARITIME EXCLUSION

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of or resulting from:

**(1)** operations over navigable waters or offshore including but not limited to drilling and production platforms, pipelines, and vessels; or

**(2)** direct or indirect actions including but not limited to subrogation involving U.S. Longshore & Harbor Workers Compensation Act (USL&H), Merchant Marine Act ("Jones Act") or other maritime laws and any amendments to those laws.

### EXCLUSION - PROFESSIONAL SERVICES

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of or resulting from the rendering or failure to render any "professional service" except by endorsement to this policy and then only to the extent of such endorsement.

"Professional service" means:

**(1)** Legal, accounting or advertising services;

**(2)** Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

**(3)** Engineering services, including related supervisory or inspection services;

**(4)** Medical, surgical, dental, x-ray or nursing services, treatment, advice or instruction;

**(5)** Any health or therapeutic service, treatment, advice or instruction;

**(6)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement, or personal grooming;

**(7)** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

**(8)** Body piercing or tattooing services including but not limited to the insertion of pigment, collagen or any other foreign substance into or under the skin;

**(9)** Services in the practice of pharmacy;

**(10)** Law enforcement or firefighting services; and

**(11)** Handling, embalming, disposal, burial, cremation or disinterment of dead bodies.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

CIC 00026

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ASSAULT AND BATTERY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** and **SECTION I – COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions** is amended and the following added:

**Assault and Battery**

This insurance does not apply to damages or expenses due to "bodily injury", "property damage" or "personal and advertising injury" arising out of or resulting from:

**(1)** Assault and Battery committed by any person;

**(2)** The failure to suppress or prevent assault and battery by any person;

**(3)** The failure to provide an environment safe from assault and battery or failure to warn of the dangers of the environment which could contribute to assault and battery;

**(4)** The negligent hiring, supervision, or training of any person;

**(5)** The use of any force to protect persons or property whether or not the "bodily injury" or "property damage" was intended from the standpoint of the insured or committed by or at the direction of the insured.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

CIC 00027

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** and **SECTION I – COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions** are amended and the following added:

This insurance does not apply to:

**Employment-Related Practices**

"Bodily injury" or "personal and advertising injury" to:

    **(1)** A person arising out of any:

        **(a)** Refusal to employ that person;

        **(b)** Termination of that person's employment; or

        **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, assault, battery, discrimination or abuse including sexual abuse directed at any person; or

    **(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

    **(1)** Whether the insured may be liable as an employer or in any other capacity; and

    **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Includes copyrighted material of ISO Properties, Inc., with its permission.

CIC 00028

08/05/2009 12:26 PM

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

## SCHEDULE

| Coverage | Amount and Basis of Deductible | |
|---|---|---|
| | PER CLAIM        or | PER OCCURRENCE |
| Bodily Injury Liability OR | $ NOT APPLICABLE | $ NOT APPLICABLE |
| Property Damage Liability OR | $ NOT APPLICABLE | $ NOT APPLICABLE |
| Bodily Injury Liability and/or Property Damage Liability Combined | $ 500 | $ NOT APPLICABLE |

A. Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

B. You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

  1. **PER CLAIM BASIS.** If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

    a. Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

    b. Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage";

    c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

      (1) "Bodily injury";

      (2) "Property damage"; or

      (3) "Bodily injury" and "property damage" combined; or

    d. Under Supplementary Payments-Coverage A and B, to all amounts we pay in the defense and investigation of any claim or "suit" to which this insurance applies

    as the result of any one "occurrence".

    If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

    With respect to "property damage", person includes an organization.

  2. **PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

U070-0702                   Includes copyrighted material of ISO Properties, Inc.,                   Page 1 of 2
with its permission.
Company

CIC 00029



    a. Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

    b. Under Property Damage Liability Coverage, to all damages because of "property damage";

    c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

        (1) "Bodily injury";

        (2) "Property damage"; or

        (3) "Bodily injury" and "property damage" combined; or

    d. Under Supplementary Payments-Coverage A and B, to all amounts we pay in the defense and investigation of any claim or "suit" to which this insurance applies

    as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

**C.** The terms of this insurance, including those with respect to:

    **1.** Our right and duty to defend the insured against any "suits" seeking those damages; and

    **2.** Your duties in the event of an "occurrence", claim, or "suit"

    apply irrespective of the application of the deductible amount.

**D.** We, at our sole election and option, may either:

    **1.** Pay any part of or all of the deductible amount to effect settlement of any claim or suit, and upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us; or

    **2.** Simultaneously upon receipt of notice of any claim or at any time thereafter, request you pay or deposit with us all or any part of the deductible amount, to be held and applied by us as herein provided.

        ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

CIC 00030

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ABSOLUTE
# AUTO, AIRCRAFT AND WATERCRAFT EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions**, paragraph **g.** is deleted and replaced with the following:

   **g.  Aircraft, Auto Or Watercraft**

   "Bodily injury" or "property damage" arising out of or resulting from the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft. Use includes operation and "loading or unloading".

   This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft.

B. **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, 4. Other Insurance**, paragraph **b. Excess Insurance**, subparagraph **(1)(d)** is deleted.

   ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# LIMITATION OF COVERAGE
# TO
# BUSINESS DESCRIPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

BUSINESS DESCRIPTION: CONDOMINIUM ASSOCIATION

A  **SECTION I · COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1. Insuring Agreement, b.** is amended and the following added:

(4) The "bodily injury" or "property damage" is caused by or results from the business described in the Schedule.

B.  **SECTION I - COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 1. Insuring Agreement, b.** is amended and the following added:

This insurance applies to "personal and advertising injury" caused by an offense in the course of the business described in the Schedule.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U159-0702

Page 1 of 1

Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DIRECTORS AND OFFICERS LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** and **SECTION I – COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions** are amended and the following added:

This insurance does not apply to:

**DIRECTORS AND OFFICERS LIABILITY**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of or resulting from:

**(1)** any actual or alleged breach of duty, misstatement or misleading statement, malfeasance, misfeasance, or nonfeasance by your directors or officers, individually or collectively, in the discharge of their duties on behalf of the Named Insured; or

**(2)** any cost or duty to defend any such claims or "suits"; or

**(3)** any obligations you or they have under any "insured contract" or any other contract or agreement to indemnify or defend any director or officer from such claims or "suits".

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

CIC 00033

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

  **b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)** Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

  **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

  **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**CIC 00034**

 © ISO Properties, Inc., 2000

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

CIC 00035

© ISO Properties, Inc., 2000  CG 00 01 10 01  □

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

   (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

   (i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

   (ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

   (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

   (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

   (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

   (i) Any insured; or

   (ii) Any person or organization for whom you may be legally responsible; or

   (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

   (i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

   (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

   (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**CIC 00036**

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

CIC 00037

© ISO Properties, Inc., 2000    CG 00 01 10 01    □

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

CIC 00038

© ISO Properties, Inc.,  2000

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

## 2. Exclusions

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of websites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

CIC 00039

© ISO Properties, Inc., 2000

CG 00 01 10 01   □

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(1)** The accident takes place in the "coverage territory" and during the policy period;

**(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while taking part in athletics.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A**.

**h. War**

Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

CIC 00040

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

CIC 00041

© ISO Properties, Inc., 2000

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

      (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

      (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

      (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by,

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

         you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

CIC 00042

© ISO Properties, Inc., 2000

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage **C**;

   b. Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage **B**.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage **A**; and

   b. Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

**CIC 00043**

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

CIC 00044

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

**CIC 00045**

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in a. above;

      (2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

      (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

      (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

         (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

         (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

      (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

CIC 00046

© ISO Properties, Inc., 2000

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

    **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    **b.** While it is in or on an aircraft, watercraft or "auto"; or

    **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    **b.** Vehicles maintained for use solely on or next to premises you own or rent;

    **c.** Vehicles that travel on crawler treads;

    **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        **(1)** Power cranes, shovels, loaders, diggers or drills; or

        **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

    **e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        **(2)** Cherry pickers and similar devices used to raise or lower workers;

    **f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    **(1)** Equipment designed primarily for:

        **(a)** Snow removal;

        **(b)** Road maintenance, but not construction or resurfacing; or

        **(c)** Street cleaning;

    **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.** The use of another's advertising idea in your "advertisement"; or

    **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

CIC 00047

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

  **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

  **(1)** Products that are still in your physical possession; or

  **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

  **(a)** When all of the work called for in your contract has been completed.

  **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

  **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

  Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  **b.** Does not include "bodily injury" or "property damage" arising out of:

  **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

  **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

  **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

  **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

  For the purposes of this insurance, electronic data is not tangible property.

  As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

  **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

  **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

  **a.** Means:

  **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

  **(a)** You;

  **(b)** Others trading under your name; or

  **(c)** A person or organization whose business or assets you have acquired; and

  **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**CIC 00048**

**b.** Includes

   **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

   **(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

  **a.** Means:

   **(1)** Work or operations performed by you or on your behalf; and

   **(2)** Materials, parts or equipment furnished in connection with such work or operations.

  **b.** Includes

   **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

   **(2)** The providing of or failure to provide warnings or instructions.

CIC 00049

© ISO Properties, Inc.,  2000
CG 00 01 10 01      ☐

COMMERCIAL GENERAL LIABILITY
CG 00 62 12 02

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WAR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **i.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**WAR**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**a.** War, including undeclared or civil war; or

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**C.** Exclusion **h.** under Paragraph **2., Exclusions** of **Section I – Coverage C – Medical Payments** does not apply. Medical payments due to war are now subject to Exclusion **g.** of Paragraph **2., Exclusions** of **Section I – Coverage C – Medical Payments** since "bodily injury" arising out of war is now excluded under Coverage **A.**

**CIC 00050**

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – CONDOMINIUM UNIT OWNERS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

WHO IS AN INSURED (Section II) is amended to include as an insured each individual unit owner of the insured condominium, but only with respect to liability arising out of the ownership, maintenance or repair of that portion of the premises which is not reserved for that unit owner's exclusive use or occupancy.

**CIC 00051**

COMMERCIAL GENERAL LIABILITY
CG 21 67 04 02

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.,** Exclusions of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

**B.** The following exclusion is added to Paragraph **2.,** Exclusions of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

CIC 00052

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

OUTPUT POLICY COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EXCESS LIABILITY POLICY
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Cancellation For Policies In Effect 90 Days Or Less**

    **a.** If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, at least:

        **(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

        **(2)** 20 days before the effective date of cancellation if we cancel for any other reason.

**B.** The following is added to the **Cancellation** Common Policy Condition:

**7. Cancellation For Policies In Effect For More Than 90 Days**

    C. **a.** If this policy has been in effect for more than 90 days, we will mail or deliver to the first Named Insured written notice of cancellation, at least:

        **(1)** 10 days before the effective date of cancellation if cancellation is for nonpayment of premium; or

        **(2)** 45 days before the effective date of cancellation for any other reason.

**C.** The following is added:

**NONRENEWAL**

**1.** If we decide not to renew this policy we will mail or deliver to the first Named Insured written notice of nonrenewal at least 45 days prior to the expiration of the policy.

**2.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

CIC 00053

08/05/2009 12:26 PM

## POLICYHOLDER DISCLOSURE
## NOTICE OF INSURANCE COVERAGE FOR CERTIFIED ACTS OF TERRORISM

You are hereby notified that, under the Terrorism Risk Insurance Act of 2002, effective November 26, 2002, you now have a right to purchase insurance coverage for losses arising out of acts of terrorism, as defined in Section 102(1) of the Act.

The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States: to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Coverage under your policy may be affected as follows:

You should know that coverage provided by this policy for losses caused by certified acts of terrorism is partially reimbursed by the United States under a formula established by federal law. Under this formula, the United States pays 90% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The premium charged for this coverage is provided below and does not include any charges for the portion of loss covered by the federal government under the act.

You should also know that your policy does *not* provide coverage for acts of terrorism that are not certified by the Secretary of the Treasury.

### Election or Rejection of Certified Terrorism Insurance Coverage

You must elect or reject this coverage for losses arising out of certified acts of terrorism, as defined in Section 102(1) of the Act, before the effective date of this policy. Your coverage cannot be bound unless our representative has received this form signed by you on behalf of all insureds with all premiums due.

☐ Coverage election. I hereby elect to purchase coverage for certified acts of terrorism, as defined in Section 102(1) of the Act for a prospective annual premium of $_____. I understand that I will not have coverage for losses arising from any non-certified acts of terrorism.

**OR**

☒ Coverage rejection. I hereby elect not to purchase coverage for certified acts of terrorism, as defined in section 102(1) of the Act. I understand that I will not have coverage for any losses arising from certified or non-certified acts of terrorism.

| | |
|---|---|
| X _____ <br> Policyholder/Applicant's Signature <br> Must be person authorized to sign for all insureds | COLONY INSURANCE COMPANY <br> Insurance Company |
|  _Jeffrey L. Crawford_ <br> Print Name | _____ <br> Policy Number |
| Coconut Grove Bellavista Condo Association <br> Named Insured | _____ <br> Submission Number |
| 7/19/06 <br> Date | _____ <br> Producer Number |
| | BURNS & WILCOX LTD <br> Producer Name |
| | 18302 Highwoods Preserve Parkway, Suite 310 <br> Street Address |
| | _____ <br> City, State, Zip |

The producer shown above is the wholesale insurance broker your insurance agent used to place your insurance coverage with us. Please discuss this Disclosure with your agent before signing.

TRIA2002 Notice-1202                 ⛵ COLONY                 Page 1 of 1

CIC 00054

# GENERAL CHANGE ENDORSEMENT

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below:

| Name of Insurance Company(ies) Colony Insurance Company GenLiab | Colony Ins Company | 100.0% |
|---|---|---|

| | Inception Date 7/19/2006 | Expiration Date 7/19/2007 |
|---|---|---|
| Endorsement Effective 7/19/2006 | Policy Number GL3254526 | Endorsement # 1 |
| Named Insured Coconut Grove Bellavista Condo Association | Countersigned By | |

(Authorized Representative)

IN CONSIDERATION OF THE PREMIUM PREVIOUSLY CHARGED, IT IS HEREBY UNDERSTOOD AND AGREED THAT THE POLICY IS AMENDED AS FOLLOWS:

Form U006(07-02) Assault And Battery Exclusion is herby deleted off policy.

All other terms and conditions remain unchanged.

```
PREMIUM.....: $    0.00
FEES........: $    0.00
TAX.........: $    0.00
FILING FEE..: $    0.00
STAMPING FEE: $    0.00

TOTAL.......: $    0.00
```

ifernandez    4/30/2007

CIC 00055

**09/11/2009 03:49 PM**

 Colony.
MEMBER ARGONAUT GROUP

8720 Stony Point Parkway
Suite 300
Richmond, VA 23235



**IN WITNESS WHEREOF, the Company has caused this policy to be signed by its President and Secretary as duly authorized representatives of the Company.**

**Dale Pilkington, President**

**Matt Pollak, Secretary**

Colony Insurance Company  ◆  Colony Specialty Insurance Company  ◆  Colony National Insurance Company

PJCG (06/05)

**CIC 00056**

**09/11/2009 03:49 PM**

## COMMON POLICY DECLARATIONS

# Colony Insurance Company
8720 Stony Point Parkway, Suite 300
Richmond, VA 23235

*Underwritten By Colony Management Services, Inc.*

| | |
|---|---|
| POLICY NUMBER | |
| GL3254866 | |
| RENEWAL OF | |
| GL3254526 | |
| PDQ CODE | |

**1. NAMED INSURED and MAILING ADDRESS:**
COCONUT GROVE BELLA VISTA HOMEOWNERS
ASSOCIATION INC.
C/O LAURA CRAKER   3566 W. FAIRVIEW ST.
COCONUT GROVE                     FL    33133

**PRODUCER:** The A
BURNS & WILCOX, LTD.
18302 HIGHWOODS PRESERVE PARKWAY   SUITE 310
TAMPA                                  FL  33647

**2. POLICY PERIOD:** From 07/19/2007 __ to 07/19/2008 __ 12:01 A.M. Standard Time at your Mailing Address above.
IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE
AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**3. THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.  THIS
PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

| COVERAGE PARTS | PREMIUM |
|---|---|
| Commercial General Liability | $    1,850.00 |
| Commercial Property | $ NOT COVERED |
| Commercial Crime | $ NOT COVERED |
| Commercial Inland Marine | $ NOT COVERED |
| Commercial Farm and Ranch | $ NOT COVERED |
| Owners And Contractors Protective | $ NOT COVERED |
| Coverage for Certified Acts of Terrorism Rejected; Exclusion Attached. (Per Policyholder Disclosure TRIA 2002 Notice attached.) | $ |

*I hereby certify this to be a true and correct copy.*

Carolyn Ford—Data Entry Supervisor

| | | |
|---|---|---|
| | **TOTAL** | $    1,850.00 |
| | | $      20.35 |
| POLICY FEE | | $      35.00 |
| INSPECTION FEE | | $     150.00 |
| SURPLUS LINES TAX | | $     101.75 |
| STAMPING TAX | | $        2.04 |
| | | $ |
| | | $ |
| | | $ |
| | | $ |

Florida Hurricane CAT Fund Assessment
Surplus Lines Agent: Michael J. Franzese
License# A089240
18302 Highwoods Preserve Prky., Suite 310, Tampa, FL 33647

Producing Agent:  BRUCE BAKER
Address:         201 ALHAMBRA CIRCLE, SUITE 1000
City:            CORAL GABLES

This Insurance is issued pursuant to the Florida Surplus Lines Law.
Persons insured by Surplus Lines Carriers do not have the protection
of the Florida Insurance Guaranty Act to the extent of any right of
Recovery for the obligation of the insolvent unlicensed Insurer.

Premium shown is payable at inception.                    Total Policy Premium: $    2,159.14

**4. FORMS APPLICABLE TO ALL COVERAGE PARTS:**

See Schedule of Forms and Endorsements - U001

# NO FLAT CANCELLATIONS

**5. BUSINESS DESCRIPTION:** CONDOMINIUM ASSOCIATION                  AB/RL

Countersigned:  09/19/07
                Date

By: _Michael J. Franzese_
Authorized Representative

Includes copyrighted material of Insurance Services Office, Inc. with its permission
Copyright, Insurance Services Office, Inc.  1984

Insured

DCJ6550 (07/ 05)

**CIC 00057**

NOTARY PUBLIC
My Commission Expires
KIMBERLY K. LOW
COMMONWEALTH
REGISTRATION NO.
COMM. EXPIRES
04/30/2012
OF VIRGINIA
NOTARY PUBLIC

09/11/2009 03:49 PM
08/05/2009 12:25 PM



COCONUT GROVE BELLAVISTA HOMEOWNERS
Insured: ASSOCIATION INC.

Policy Number: GL3254866

# SCHEDULE OF FORMS AND ENDORSEMENTS

Forms and Endorsements applying to and made part of this policy at the time of issuance:

| NUMBER | TITLE |
|---|---|
| **FORMS APPLICABLE - POLICY COMMON FORMS** | |
| PJCG (06-05) | COMMON POLICY JACKET |
| DCJ6550 (07-05) | COMMON POLICY DECLARATIONS |
| U001 (10-04) | SCHEDULE OF FORMS AND ENDORSEMENTS |
| U002 (09-04) | MINIMUM POLICY PREMIUM |
| U094 (07-02) | SERVICE OF SUIT |
| UCG2175 (09-04) | EXCL-CERT. ACTS OF TERRORISM AND OTHER ACTS OF TERRORISM |
| IL0017 (11-98) | COMMON POLICY CONDITIONS |
| IL0021 (04-98) | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT |
| **FORMS APPLICABLE - COMMERCIAL GENERAL LIABILITY** | |
| DCJ6553 (07-02) | COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS |
| U003 (07-02) | HAZARDOUS MATERIALS EXCLUSION |
| U004 (07-07) | MISCELLANEOUS EXCLUSIONS ENDORSEMENT |
| U016 (07-02) | ATHLETIC OR SPORT PARTICIPANTS EXCLUSION |
| U048 (09-04) | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| U070 (07-07) | DEDUCTIBLE LIABILITY INSURANCE |
| U132A (07-03) | HIRED AUTO AND NON-OWNED AUTO LIABILITY |
| U155 (07-02) | ABSOLUTE AUTO, AIRCRAFT AND WATERCRAFT EXCLUSION |
| U159 (07-02) | LIMITATION OF COVERAGE TO BUSINESS DESCRIPTION |
| U177 (07-02) | DIRECTORS AND OFFICERS LIABILITY EXCLUSION |
| CG0001 (12-04) | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG0067 (03-05) | EXCLUSION - VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX |
| CG2004 (11-85) | ADDITIONAL INSURED - CONDOMINIUM UNIT OWNRS |
| CG2139 (10-93) | CONTRACTUAL LIABILITY LIMITATION |
| CG2167 (12-04) | FUNGI OR BACTERIA EXCLUSION |
| **FORMS APPLICABLE - STATE SPECIFIC** | |
| UIL0255 (07-02) | FLORIDA CHANGES - CANCELLATION AND NONRENEWAL |

Important notice: See the actual policy forms attached for the full title, terms and conditions.

U001 (10/04)

Insured

Page 1 of 1

CIC 00058

**09/11/2009 03:49 PM**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MINIMUM POLICY PREMIUM

The following additional policy Conditions supercede any other policy conditions as regards the "minimum earned premium" for this policy:

Minimum Earned Premium

This policy is subject to a "minimum earned premium". "Minimum earned premium" means the premium that is calculated as follows:

1. The total policy premium as shown in the policy Declarations, plus
2. Any premium adjustment by endorsements, plus
3. Any additional premium developed by audit.

Audits and Minimum Earned Premium

Audits will not reduce the "minimum earned premium". The due date for audit premiums is the date shown as the due date on the bill.

Cancellation and Minimum Earned Premium

1. If you cancel this policy, the return premium will be 90% of the pro rata balance of any remaining unearned premium but no less than __25__ % of the "minimum earned premium".
2. If we cancel the policy for any reason, other than for non-payment of premium, the "minimum earned premium" shall not apply. We will return to you the pro rata amount of the unearned premium.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U002-0904

Page 1 of 1

Insured

CIC 00059

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SERVICE OF SUIT

Service of process may be made upon the Company to:

Claims Manager
  Colony Insurance Company,
  Colony National Insurance Company, or
  Colony Specialty Insurance Company
8720 Stony Point Parkway, Suite 300
Richmond, Virginia 23235

Where required by statute, regulation or other regulatory directive, the Company appoints the Commissioner of Insurance, or other designee specified for that purpose, as its attorney for acceptance of service of all legal process in the state in any action or proceeding arising out of this insurance.

The Commissioner or other designee is requested to forward process to the Company as shown above, or if required in his/her particular state, to a designated resident agent for service of process.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

CIC 00060

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CERTIFIED ACTS OF TERRORISM AND OTHER ACTS OF TERRORISM EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

A. The following exclusion is added:

This insurance does not apply to:

**TERRORISM AND PUNITIVE DAMAGES**

"Any injury or damage" arising, directly or indirectly, out of:

(1) "Certified acts of terrorism" or "other acts of terrorism", including any action taken in hindering or defending against an actual or expected incident of "certified acts of terrorism" or "other acts of terrorism"; or

(2) Any act of terrorism:

(a) that involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

(b) that is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

(c) in which pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials;

regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage in (1) or (2) above; including

(3) Damages arising, directly or indirectly, out of (1) or (2) above that are awarded as punitive damages.

B. Exclusion **h.** under Paragraph **2. Exclusions** of **SECTION I – COVERAGE C MEDICAL PAYMENTS** does not apply.

C. The following definitions are added to the **DEFINITIONS** Section:

For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

a. The act resulted in aggregate losses in excess of $5 million; and

**CIC 00061**